# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

QUINN BREECE LOBATO, *et al.*,          *

      Plaintiffs,          *

v.          *          Case No.: GJH-15-2978

                *

SUSAN K. HERNDON, *et al.*,          *

      Defendants.          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This is an action by Plaintiffs Quinn Breece Lobato ("Lobato"),[1] as current sole Trustee of the Breece/Herndon Family Trust ("the Trust"), and Vanessa Christine Breece, Olin Blair Breece, and Adam Samuel Breece, as beneficiaries of the Trust, (collectively, "Plaintiffs"), against Defendants Susan K. Herndon, Amelia Marie Breece, and Benjamin Scott Breece[2] (collectively, "Defendants"), to recover financial assets held by Herndon and seek damages for alleged fraud, conversion, and tortious interference with contract. *See* ECF No. 1. Presently pending before the Court is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3), (4), (5), and (6). ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, Defendants' Motion to Dismiss is denied.

---

[1] The action is captioned as *pro se*, but as the parties have noted, Ms. Lobato represents Plaintiffs in her capacity as a Maryland attorney. *See* ECF No. 19-3 at 8.
[2] To alleviate confusion, the youngest members of the Breece family will be referred to by first name.

## I.    BACKGROUND[3]

Robert Breece and Susan Herndon were married on July 29, 1991. *See* ECF No. 21 at 1.[4]

Ms. Herndon had not previously been married, nor had any children. *Id.* at 24. Mr. Breece had

four children from two previous marriages: Vanessa, Olin, Adam, and Quinn Breece. *See id.*[5]

Mr. Breece and Ms. Herndon later had two children together, Amelia and Benjamin Breece.[6] Mr.

Breece and Ms. Herndon created a "revocable inter vivos trust" the "Breece/Herndon Family

Trust" on September 2, 1992. ECF No. 1 ¶ 11; ECF No. 1-5.[7] At that time, Mr. Breece and Ms.

Herndon lived together at 4811 Mercury Drive, Rockville, Maryland 20853 (the "Maryland

Residence"). Mr. Breece's four other children also lived in Maryland.

The design and operation of the Trust is complex, but the relevant provisions, included in

the Amended Trust, are as follows: during the lives of both Mr. Breece and Ms. Herndon (the

"Grantors" or the "Undersigned"), the Trust was to be divided into two separate sub-trusts, the

"R.O.B. Trust" and the "S.K.H. Trust," which belonged to Robert Breece and Susan Herndon,

respectively. ECF No. 1 ¶ 14; *see* No. 1-5 at 1. Property held in these two Trusts was intended to

be "exclusive property" of each Grantor, and "separate property at the time of such conveyance

or transfer, shall remain the separate property of the Undersigned transferring such property to

the Trustees." *Id.* at 1, 3.

---

[3] As this Opinion addresses Defendants' Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true, and construes those facts in the light most favorable to the plaintiff. *See, e.g. Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).
[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[5] Robert Breece was first married to Katie Kleine Breece, with whom he had one child, and from whom he divorced in 1974. ECF No. 21 at 24. Mr. Breece was married to his second wife, Shireen Blair Breece, with whom he had three children, and from whom he divorced in 1989. *Id.* At the time the Original Family Trust was created, Vanessa was 23, Olin was 13, Adam was 12, and Quinn was 10. ECF No. 19-3 at 1.
[6] Amelia was born on February 13, 1993. Benjamin was born on November 20, 1995.
[7] Only the "Breece/Herndon Family Trust As Amended" or the "Amended Trust" is attached to the pleadings, which was executed and signed by Susan Herndon and Robert Breece on February 6, 1997. ECF No. 1-5.

As governed by Article XXII of the Trust, after the first Grantor died, the "Trust Estate" would be divided into "two separate Trusts," the "Marital Trust" and the "Family Trust." ECF No. 1-5 at 9. The Marital Trust would "consist of the survivor['s] . . . separate property in the Trust Estate and a fractional proportion in all property of the [deceased Grantor]," subject to a marital tax exemption. ECF No. 1-5 at 9; ECF No. 19-3 at 6. The Family Trust would consist of "the balance of the Trust Estate remaining after setting aside all property of the Trust Estate that is included in the Marital Trust." ECF No. 1-5 at 11. After the second Grantor died, as governed by Article XXIII of the Trust, "all Trust principal" was to be "held in Trust for the benefit of [the Grantors'] beneficiaries." ECF No. 1-5 at 12. The beneficiaries of the Trust would be the "children of the Undersigned then living and children of the Undersigned then deceased but leaving surviving issue." *Id.* at 13. Further, part of the Trust was to be "set-aside" for the support and education of beneficiaries under the age of 21. *Id.*[8]

In a document known as "Schedule A," dated September 2, 1992, Herndon transferred all of her interests in several "Private Limited Partnership Interests," of which she was the stated owner, to the S.K.H. Trust. ECF No. 1-5 at 18–19. These Partnership Interests included the Herndon Family Limited Partnership (the "HFL Partnership"), as well as the Breece Family Limited Partnership, the S.K.H. Family Limited Partnership, and the Smith Mountain Family Limited Partnership (the "Other Partnerships"). The Limited Partnership Agreement of the HFL Partnership describes Susan Herndon as owning a 98% interest in the HFL Partnership. ECF No. 1-13 at 2.

Mr. Breece and Ms. Herndon divorced on January 14, 2003. ECF No. 21 at 1–2. A Property Settlement Agreement, dated October 29, 2002, was incorporated into the parties' Final Divorce Decree. ECF No. 1 ¶ 19; ECF No. 21 at 4. Robert Breece died six years later on August

---

[8] The so-called "Minor's Trust." ECF No. 1-6 at 5; ECF No. 19-3 at 6.

10, 2009. ECF No. 1 ¶ 29. Susan Herndon qualified to act as the Administrator of Robert Breece's Estate (the "Estate"). ECF No. 1 ¶ 29. Herndon probated, or established the validity of, a copy of Robert Breece's Last Will and Testament (the "Will") in the Circuit Court of Warren County, Virginia (the "Warren County Court"). *Id.* ¶ 30. Upon Plaintiff Lobato's request, Herndon also emailed Lobato a copy of the Will, along with a copy of the Trust, in January 2010. *Id.* at 5. The copy of the Trust sent by Herndon did not include Schedule A. *Id.* ¶ 36.

Plaintiff Quinn Breece Lobato was elected to act as Co-Trustee of the Trust by a majority of the Trust's beneficiaries (four of the six Breece children) on November 14, 2010. ECF No. 1 ¶ 52. Throughout 2010 and 2011, the family was litigating several lawsuits that had been filed against Robert Breece's Estate. *Id.* at 8. Herndon told Lobato that she did not intend to transfer assets from the Estate to the Trust until the lawsuits were resolved. *Id.* ¶ 54. Herndon also told Lobato that the Trust had been "created" but not "funded." *Id.* ¶ 55; *see also* ¶ 48. However, Herndon allegedly transferred $50,000 from the Estate to the Trust in November 2010, unbeknownst to Plaintiffs. *Id.* ¶¶ 56–57. The lawsuits against Mr. Breece's Estate were not resolved until November 2011. *Id.* ¶ 58. On November 27, 2011, Lobato sent Herndon a letter, notifying Herndon that Lobato had been elected to act as Co-Trustee of the Trust. *Id.* ¶ 60.

On November 29, 2011, Herndon's Virginia attorney mailed a letter to Lobato, refusing to recognize Lobato's status as Trustee, and claiming Herndon's authority to act as Sole Trustee of the Trust. ECF No. 1 ¶ 60. Lobato filed suit in the Warren County Court in November 2012, seeking a declaratory judgment regarding the validity of her status as Trustee. *Id.* ¶ 63. During this litigation, two family members, Daniel Breece and Frederick Rodriguez, were appointed to serve as Co-Trustees. ECF No. 1 ¶ 64; *see* ECF No. 19-3 at 10. Herndon resigned as Trustee in May 2013. ECF No. 1 ¶ 65. The Warren County Court entered an order on October 10, 2014,

4

confirming that the election of Lobato as Trustee was authorized by the terms of the Trust, and that Lobato had the authority to act as Trustee. *Id.* ¶ 67.[9] In the order, the Warren County Court also removed Daniel Breece as a Trustee, and Mr. Rodriguez resigned as Trustee on October 20, 2014. *Id.* ¶¶ 68–69. In October 2014, Ms. Lobato received a number of Trust-related documents from Daniel Breece's wife. *Id.* ¶ 70. Upon review of these documents, Lobato first discovered "Schedule A," which included the previously-undisclosed Partnerships of Ms. Herndon. *Id.* ¶ 71. Lobato contends that the HFL Partnership consists of accounts valued at $510,632.86. ECF No. 1 at 10. Plaintiffs claim that this money belongs to the Trust, and therefore bring suit against Defendants.

Plaintiffs filed the instant Complaint on September 30, 2015. Plaintiffs allege claims of Detinue (Count I), Fraud (Count II), Conversion (Count III), and Tortious Interference with Contract (Count IV). In support of Count I, Plaintiffs allege that Herndon has made unauthorized "distributions to herself" from the HFL Partnership after Mr. Breece's death, and now "unjustly detains" the HFL Partnership. ECF No. 1 at 11.[10] In support of Count II, Plaintiffs allege that Herndon committed fraud when she made false representations or omissions that the copy of the Trust was a "true and complete copy," and sent accountings to Plaintiff Lobato that "did not include the assets listed on Schedule A." *Id.* at 12–15.[11] In support of Count III, Plaintiffs allege that Herndon converted Schedule A by "retaining it and not giving it to Trustee Lobato." *Id.* at 16. In support of Count IV, Plaintiffs allege that Herndon interfered with Lobato's right to act as Trustee by refusing to acknowledge Lobato's status as Co-Trustee and hiring an attorney to

---

[9] The Warren County Court also entered an order on January 26, 2015, ruling that "Herndon should not act as trustee of any trust created under the Trust" and that "Trustees should proceed as if Herndon predeceased Robert Breece and administer the Trust under the provision of Article XXIII." ECF No. 1-6 at 2.

[10] Plaintiffs claim that because the Warren County Court ordered that the parties proceed as if Herndon "predeceased" Robert Breece, Ms. Herndon's "right to act as trustee of the Trust ended on August 10, 2009 [when Mr. Breece died]," and that she "no longer had any interest in any of those [Trust] assets." ECF No. 1 at 15–16.

[11] Plaintiffs claim that Defendant Herndon fraudulently concealed Schedule A, intentionally omitted assets from Trust accountings, and made false testimony under oath to the Warren County Court.

prevent Lobato from acting as Trustee. *Id.* at 16–17. Defendants, through counsel, have filed a Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(2), (3), (4), (5), and (6). ECF No. 14. Plaintiffs filed their Opposition, ECF No. 19, and Defendants filed their Reply, ECF No. 20.

## II.     ANALYSIS

### A. Process and Service of Process – Fed. R. Civ. P. 12(b)(4) and (5)

#### i.  Standard of Review

Defendants may, as here, challenge the sufficiency of process or service of process under Fed. R. Civ. P. 12(b)(4) and (b)(5). *O'Meara v. Waters,* 464 F. Supp. 2d 474, 476 (D. Md. 2006). Following such a motion, Plaintiffs bear the burden of establishing the validity of service under Federal Rule of Civil Procedure 4. *Id.* Rule 4, which governs summons in a civil action, provides in relevant part that "any person who is at least 18 years old and not a party may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2). Rule 4 further provides that service may be made by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2).

The Fourth Circuit has provided that in cases where service of process has given a defendant actual notice of the claim against it, courts may adopt a liberal interpretation of Rule 4 and "uphold the jurisdiction of the court." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). While the "plain requirements for the means of effecting service of process may not be ignored," where the defendant has actual notice of the action, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

### ii. Analysis

Defendants argue that process was insufficient as to all three Defendants because the "Return of Service" forms did not specify that the process server, Stacey Loving, was over the age of 18 and not a party to the action. ECF No. 14-2 at 6. Defendants further argue that with respect to Defendants Susan Herndon and Benjamin Breece, the forms also do not specify "the dwelling place where process was left" or "the name of the receiving person or agent." *Id.* Additionally, Defendants argue that service of process was insufficient as to Benjamin Breece because his "dwelling or usual place of abode" is where he attends college in Terre Haute, Indiana. *Id.* at 7. Defendants arguments are unpersuasive.

In support of the sufficiency of service, Plaintiffs attach the affidavit of the process server, Stacey Loving, ECF No. 19-2. While the "Return of Service" form is silent as to her age, Loving testifies in the affidavit that she is "over the age of 18" and "not a party to the above-captioned action." ECF No. 19-2. Moreover, the Return of Service forms do not even list a designated line to write the date of birth of the process server — only lines for a signature, name, address, and phone number. *See* ECF No. 14-1 at 11–13. Additionally, the plain language of Rule 4 does not require the return of service form to include the date of birth of the process server, or even the production of a return of service form at all. Fed. R. Civ. P. 4(c). Rule 4 merely requires that service be made by "any person at least 18 years old and not a party." *Id.* The face of the pleadings demonstrates that Stacey Loving is not a party.

Plaintiffs further note that Loving "delivered three copies of the Complaint and three summonses to Amelia Breece at the shared home residence of all three defendants: 3359 Turnberry Circle, Charlottesville, VA 22911 ("Turnberry Circle")" ECF No. 19-1 at 10; ECF Nos. 1, 12, 16. As Plaintiffs point out, "Defendants admit that Amelia Breece is Susan Herndon's

daughter and Benjamin Breece's sister, she is over the age of 18 (23 years old), and she resides at Turnberry Circle along with Herndon and Benjamin Breece." *Id.* Further bolstering this point, the Return of Service forms attached to Defendants' Motion to Dismiss appear to bear Amelia Breece's signature at the bottom of each form, and Defendants have not disputed the authenticity of such signatures or claimed that Amelia was not the person who received the summonses and complaint. Because Amelia was a resident of Defendants' shared dwelling, and of suitable age, service was properly effectuated as to Amelia Breece, Susan Herndon, and Benjamin Breece under Fed. R. Civ. P. 4(e)(2)(A)–(B).

With respect to Benjamin, his temporary stay at college does not change his dwelling or usual place of abode from his family home at Turnberry Circle. *See, e.g. Stewart v. Brown*, Civil No.: CL12-1415, 2015 Va. Cir. LEXIS 229, at *3–4 (Va. Cir. Ct. Nov. 23, 2015) (noting that "[a] usual place of abode may be a college student's permanent home address while the college student is away at college."); *Ali v. Mid-Atlantic Settlement Servs.*, 233 F.R.D. 32, 36–37 (D.D.C. 2006); *Hubbard v. Brinton*, 26 F.R.D. 564, 565 (E.D. Pa. 1961). Plaintiff provides further evidence and documentation that Benjamin regularly uses the Turnberry Circle address to send and receive mailings, and that he lists the Turnberry Circle address on college tuition statements. ECF No. 19-1 at 15–18; ECF Nos. 19-4–19-10. For these reasons, Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(4) and (5) is denied.

### B.  Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)

#### i.  Standard of Review

Defendants further move to dismiss Plaintiffs' complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). ECF No. 14-2 at 13–18. Upon such a challenge, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately

to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). If the court decides the issue without an evidentiary hearing, the plaintiff is only required to make a *prima facie* showing of jurisdiction. *Mylan Labs., Inc. v. Azko, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). In resolving 12(b)(2) motions, the court may "consider evidence outside the pleadings." *Structural Preservation Sys., LLC v. Andrews,* 931 F.Supp. 2d 667, 671 (D. Md. 2013). The court shall consider "all relevant pleading allegations in the light most favorable to the plaintiff," and draw all "reasonable inferences" in the plaintiff's favor. *Mylan Labs.,* 2 F.3d at 60–62.

A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 710 (4th Cir. 2002); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212–13 (4th Cir. 2002). Thus, "our statutory inquiry merges with our constitutional inquiry." *Carefirst,* 334 F.3d at 396–97. The Court must therefore determine whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).

A court may assert personal jurisdiction over a nonresident defendant in one of two ways. *Universal Leather, LLC v. Koro AR. S.A.,*773 F.3d 553, 559 (4th Cir. 2014). The first is through

"specific jurisdiction," in which the "defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Id.* (citing *Tire Eng'g v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 301 (4th Cir. 2012). The second is through "general jurisdiction," which requires a "more demanding showing of continuous and systematic activities in the forum state." *Id.* Plaintiffs here appear to assert that the Court has specific jurisdiction over Defendants. Thus, we analyze: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.*

### ii. Analysis

Defendants argue that this Court, sitting in Maryland, lacks jurisdiction over Defendants Herndon, Amelia, and Benjamin. ECF No. 14-2 at 8. Defendants note that all three Defendants have lived in Virginia continuously since 1997. *Id.* at 8–9.[12] Further, Herndon "conducted all affairs as trustee from her home in Virginia" from 1997 to 2014. *Id.* at 9. Defendants assert that none of the "alleged actions asserted in the Complaint as taken by Ms. Herndon, albeit denied, were ever conducted by her in Maryland." *Id.* Plaintiffs do not dispute that the actions complained of, including Ms. Herndon's alleged wrongful control and conversion of certain assets, fraudulent representations, and tortious interference with contract, were perpetrated from Virginia. *See* ECF No. 1 at 10–19 (alleging, e.g., withdrawals from accounts made after 2009 and communications sent by Herndon to Lobato during 2010 and 2011). "Schedule A" also states that the "State of Domicile" for the disputed Limited Partnership Interests, including the HFL Partnership, is Virginia. However, the personal jurisdiction inquiry does not end there.

---

[12] With the exception of Benjamin's stay in Indiana for college beginning in 2014.

"[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 472 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). When Susan Herndon and Robert Breece created the original Trust in 1992, Ms. Herndon and Mr. Breece lived together in Rockville, Maryland and were Maryland residents. ECF No. 1-5 at 1.[13] Mr. Breece's four existing children, the named Plaintiffs in this suit, also lived in Maryland at that time and have all lived in Maryland ever since. The Amended Trust names "Robert O. Breece and Susan K. Herndon during their joint lives as Co-Trustees." ECF No. 1-5 at 15. The Trust also names Plaintiffs Vanessa, Olin, Adam, and Quinn, Maryland residents, as beneficiaries. *Id.* Thus, taking inferences in Plaintiffs' favor, Herndon agreed to serve in a fiduciary capacity for the benefit of Maryland beneficiaries. Herndon did so from Maryland from 1992 until at least 1997, during which time she was a resident of Maryland.

Upon the death of Robert Breece in 2009, Herndon, by then living in Virginia, reaffirmed her acceptance and confirmation as "Successor Trustee" of the "Breece/Herndon Family Trust." ECF No. 19-15. At that time, four of the six named beneficiaries still lived in Maryland. Pursuant to the provisions of the Amended Trust, as Trustee, Herndon "ha[d] full power to do everything in administering these Trusts that they deem to be for the best interest of the beneficiaries" and was additionally entitled to "reasonable compensation for services rendered." ECF No. 1-5 at 5, 7. In her capacity as Trustee, Herndon made "phone calls to Maryland" and "mailed accountings, distributions and tax forms to [the] Maryland beneficiaries." Thus, there can be no question that

---

[13] The only copy of the Trust attached to the Complaint is the "Breece/Herndon Family Trust As Amended," or the so-called "Amended Trust," dated February 6, 1997. While the purported Notary bearing witness to the parties' signing, Glenn M. Johnson, was a Notary in the State of Maryland, the Trust instrument also bears an indication referencing "State of Virginia – County of Fairfax." Thus, where the Trust was physically executed is at least ambiguous.

Herndon, although acting from Virginia, created a continuing relationship and obligations with Maryland residents.

Courts with similar facts have come to the same conclusion. In *Regnery v. Wallerich*, the court denied the defendant co-trustees' motion to dismiss based on lack of personal jurisdiction, where plaintiff beneficiaries were all citizens of the forum state, a non-negligible portion of trust assets was located in the forum state, and the trust instruments were executed and created in the forum state. *Regnery v. Wallerich*, 626 F. Supp. 2d 872, 873–74 (N.D. Ill. 2009). In *Steen Seijo v. Miller*, the court found that "[a]s trustees, [defendants] voluntarily took on the responsibility of administering a trust established for the benefit of a resident of Puerto Rico. Entering into this agreement, which had a substantial connection to Puerto Rico, made it foreseeable that the defendants may be brought before a federal court in Puerto Rico." *Steen Seijo*, 425 F. Supp. 2d 194, 200 (D.P.R. 2006). The court noted that "[t]hese circumstances are sufficient to establish purposeful availment," as required under the minimum contacts test. *Id.* Finally in *Doe v. Connors*, where a defendant bargaining group controlled benefits for Virginia beneficiaries and acted as a representative for Virginia companies, the court found the defendant had sufficient minimum contacts with Virginia. *Doe v. Connors*, 796 F. Supp. 214, 219 (W.D. Va. 1992).

Defendants' cited cases, upon close review, are distinguishable. In *Laupot v. Berley*, 865 F.2d 255 (4th Cir. 1988), the Fourth Circuit upheld the decision by the District Court for the Western District of Virginia to dismiss a suit against a New York executor for lack of personal jurisdiction in Virginia. The court noted that the fact that "the accounting and other documents were mailed from New York to [the plaintiff remainderman in] Virginia" was not enough to establish personal jurisdiction over the defendant executor. *Laupot v. Berley*, 865 F.2d 255, 1988 WL 131819, at *1 (4th Cir. 1988). However, in this case, Herndon did more than merely mail

12

documents to Maryland. Herndon created the Trust as a Maryland resident, and has for substantial periods of time relevant to the action, served as a Trustee for the benefit of Maryland beneficiaries — her own four stepchildren, no less. In *Hanson v. Denckla*, also cited by Defendants, the Supreme Court held that Florida did not have personal jurisdiction over a non-resident Delaware trustee. *Hanson v. Denckla*, 357 U.S. 235 (1958). The Court reasoned, "[t]he first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State." *Id.* at 252. The Court thus concluded, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* at 253. But Plaintiffs here engaged in no unilateral activity. Plaintiffs did not move to Maryland after the inception of the Trust. As Plaintiffs note in their Opposition, "*We have been here in Maryland the whole time.*" ECF No. 19-1 at 30 (emphasis in original). Accordingly, personal jurisdiction over Herndon in Maryland is proper.

Additionally, pursuant to Md. Code, Est. & Trusts § 14.5-202, Amelia and Benjamin Breece, as "beneficiar[ies] of a trust having the principal place of administration for the trust in the State" and "accepting a distribution from a trust [having its principal place of administration of the trust in the State]," "submit[] personally to the jurisdiction of the courts of the State regarding a matter involving the trust." Md. Code Ann., Est. & Trusts § 14.5-202 (West); *see also Potts v. Potts*, No. 1:13-CV-1986-WDQ, 2015 WL 4258143, at *4 (D. Md. July 24, 2015) (noting that "this subsection creates a 'long-arm-type' jurisdiction over out-of-state beneficiaries of Maryland trusts; in other words it permits out-of-state beneficiaries . . . to sue and be sued in Maryland concerning administration of a trust's assets."). The record demonstrates that "the principal place of administration" or "situs" of the Breece/Herndon Family Trust was transferred

to the State of Maryland as of May 20, 2015. ECF No. 21 at 52; *see* ECF No. 19-3 at 10

(testifying that notice was sent on March 5, 2015). Plaintiffs also attach, as evidence, a check

from the "Breece/Herndon Family Trust" to Benjamin Breece dated July 27, 2016 for $5,000.00

as a "beneficiary distribution," ECF No. 19-9, and a check to Amelia Breece dated April 2, 2015

for $5,796.33 from the Trust as a "tax refund," ECF No. 19-11. Hence, the Court concludes that

both Amelia and Benjamin were beneficiaries of a Maryland trust and accepted distributions

from a Maryland trust. Thus, this Court also has personal jurisdiction over Defendants Amelia

and Benjamin Breece. Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is

denied.

### C.  Venue – Fed. R. Civ. P. 12(b)(3)

#### i.  Standard of Review

Defendant moves under Fed. R. Civ. P. 12(b)(3) to dismiss the Complaint for improper

venue. ECF No. 14-2 at 20–21. A civil action may be properly brought in: "(1) a judicial district

in which any defendant resides, if all defendants are residents of the State in which the district is

located; (2) a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred . . .  or (3) if there is no district in which an action may otherwise be brought,

any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action." 28 U.S.C. § 1391(b). In considering a motion to dismiss for improper

venue, courts must "review the entire sequence of events" underlying the claims. *Topiwala v.*

*Wessell,* WDQ-11-0543, 2012 WL 122411, at * 6 (D. Md. Jan. 12, 2012) (citing *Power Paragon,*

*Inc. v. Precision Tech. USA, Inc.,* 605 F. Supp. 2d 722, 726 (E.D. Va. 2008)). It is sufficient that

a substantial part of the events occurred in a district, "even if a greater part of the events occurred

elsewhere." *Id.* All inferences must be drawn in the plaintiff's favor, and "the facts must be

viewed as the plaintiff most strongly can plead them." *Silo Point II LLC v. Suffolk Const. Co., Inc.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008).

### ii.  Analysis

Defendants argue that venue is improper because no Defendant resides in Maryland, and a substantial part of events or omissions did not occur in Maryland. ECF No. 14 at 20. However, the Court is mindful that only a *substantial* part of events or omissions need take place in Maryland, not a *majority* of the events. Further, the Fourth Circuit has made clear, "[a]s a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer [in this case, presumably to Virginia] is appropriate." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (internal citations omitted).

Here, four of the six named beneficiaries live, and have always lived, in Maryland. The Trust was created while Defendant Herndon was a resident of Maryland. ECF No. 1-5 at 1. Herndon executed Schedule A, which allegedly concealed the disputed Trust assets, while a resident of Maryland. *Id.* at 18–19. Herndon also transferred real property in Maryland, the residence at 4811 Mercury Drive, Rockville, Maryland, to the Trust. *Id.* at 19. The Trust was administered until at least 1997 from Maryland. See ECF No. 14-1 at 1; ECF No. 1-5 at 16. And it appears that at least some of the disputed assets may currently be held in Maryland. *See* ECF No. 1-22 at 1. Plaintiff Lobato also testifies in her affidavit that, as current sole Trustee, "I record all transactions and create trust accountings from my home in Maryland, I consult with financial advisors in Maryland . . . and an accountant to prepare Trust taxes in Maryland, I make investments of Trust funds in Maryland, and the principal place I administer this Trust is in Maryland." ECF No. 19-3 at 10. Finally, all the alleged harm has been "felt" in Maryland. ECF

No. 19-1 at 26. Thus, venue in Maryland is proper. *See Doe v. Connors*, 796 F. Supp. 214, 221 (W.D. Va. 1992) (finding venue proper where all beneficiaries lived in Virginia and plaintiffs chose to sue in Virginia). Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is denied.

### D. Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

#### i. Standard of Review

Finally, Defendants move to dismiss the Complaint for failure to state a claim against Amelia and Benjamin Breece. ECF No. 14-2 at 21. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### ii. Analysis

In an effort to dismiss Amelia and Benjamin from the lawsuit, Defendants argue that they had "[nothing] to do with administration of the Trust at issue here." ECF No. 14-2 at 21. In response, Plaintiffs explain that "Amy and Ben are named as interested parties," and acknowledges that "the Complaint does not allege any wrongdoing on their behalf, so to the extent they do not wish to be 'involved' in the litigation, they do not need to be." ECF No. 19-1 at 19. However, unlike "a nominal party," which "has no personal stake in the outcome of the litigation and is not necessary to an ultimate resolution," *Birnbaum v. SL & B Optical Centers, Inc.*, 905 F.Supp. 267, 271 (D. Md. 1995), "[n]ecessary parties are those who have or claim

material interests in the subject matter of a controversy, and those interests will be directly affected by an adjudication of the controversy." *Turnamics, Inc. v. Advanced Envirotech Sys., Inc.*, 54 F. Supp. 2d 581, 585 (W.D.N.C. 1999); *City of Albemarle v. Security Bank & Trust Co.*, 106 N.C. App. 75, 77 (1992). "If a party is necessary, it will be ordered into the action." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999); *see also Lincoln Property Co. v. Roche*, 546 U.S. 81, 91 (noting that, "[i]n general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.").

Under Federal Rule of Civil Procedure 19(a), a party is "necessary" if at least one of two conditions are met: (1) without the party, the court cannot "accord complete relief among existing parties;" or (2) the party claims an interest relating to the subject matter of the case and disposing of the case in the party's absence would impair the party's ability to protect that interest. Fed. R. Civ. P. 19(a)(1). The discussion in *Mutchler v. Wilson* is instructive. *Mutchler v. Wilson*, No. 5:15-CV-150-GNS-LLK, 2015 WL 7015326, at *2 (W.D. Ky. Nov. 12, 2015). In that case, plaintiff beneficiary sued defendant co-trustees of a trust, but two other trust beneficiaries were not named and were "absent" from the litigation. *Id.* at *1. The court noted that without the "absentee parties," it could still accord complete relief to plaintiff, but:

> It is equally clear that the Absentee Parties claim an interest in the subject matter of this case—the Trust assets. While [Plaintiff] Mutchler presents affidavits from the Absentee Parties disclaiming their opportunity to participate in this lawsuit, the parties have not disclaimed any right to their respective shares of the Trust.

*Id.* at * 2. The court held that the absentee parties were not only necessary to the litigation, but indispensable, such that the action could not proceed without them. *Id.* at *3–4. Just as in *Mutchler*, Defendants Amelia and Benjamin Breece do not appear to disclaim their positions under the Trust, "and their prospective interests are [thus] necessarily affected by the outcome of

this litigation." *Id.* at *3. Similarly in *Graves v. Vitu,* the court held that a surviving descendant of a wealthy estate was a necessary and indispensable party to the action, because she had a potential interest in the trusts at issue and "permitting the action to proceed without her may impair her ability to protect her interests." *Graves v. Vitu,* No. 5:12CV065, 2013 WL 499339, at *6 (W.D. Va. Feb. 7, 2013). As other courts have noted, "[a]s a general rule, all beneficiaries are needed for the adjudication of the removal of trustees and the disposition of trust assets as to prevent prejudice to the other beneficiaries." *See Walsh v. Centeio,* 692 F.2d 1239, 1243–44 (9th Cir. 1982); *see also Stevens v. Smith,* 126 F. 706, 711 (6th Cir. 1903) (finding legatees indispensable because "in suits affecting the rights of residuary legatees or of next of kin, the general rule is that all the members of the class must be made parties."). Thus, the Court finds that as named beneficiaries of the Breece/Herndon Family Trust, Defendants Amelia and Benjamin Breece are necessary parties and declines to dismiss them from this action. Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3), (4), (5), and (6), ECF No. 14, is denied. A separate Order shall issue.

Date: March 4 , 2017

GEORGE J. HAZEL
United States District Judge